UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EXAM COORDINATORS  CASE NO.:
NETWORK, INC.,

    Plaintiff,

v.

HEATHER R. WILSON and
HEALTH MOXY, LLC,

    Defendants.
_____/

# VERIFIED COMPLAINT

    Plaintiff, EXAM COORDINATORS NETWORK, INC., by and through undersigned attorney, sues Defendants, HEATHER R. WILSON and HEALTH MOXY, LLC, and states:

## Parties, Jurisdiction and Venue

    1.    Plaintiff, EXAM COORDINATORS NETWORK, INC., ("**ECN**") is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located in Boca Raton, Palm Beach County, Florida, and does business throughout the United States with regional offices strategically placed throughout the country.

    2.    Defendant, HEATHER R. WILSON ("**Wilson**"), is an individual who resides in Scottsdale, Arizona and is otherwise *sui juris*.

    3.    Defendant, HEALTH MOXY, LLC, ("**Health Moxy"**) is an Arizona limited liability company, doing business in Maricopa County, Arizona.

    4.    This Court has jurisdiction over the dispute and the parties as ECN seeks temporary and permanent injunctive relief seeking enforcement of a contract between the parties.

5. This Court has diversity jurisdiction over this matter as Defendant Wilson resides in the State of Arizona and Plaintiff is an Illinois corporation whose principal place of business is located in Florida.

6. Plaintiff seeks injunctive relief against Defendant. Plaintiff measures the value of the injunctive relief sought in this action in excess of $75,000.00.

7. This Court has jurisdiction over Defendant, Health Moxy, since that is the business vehicle being utilized by Defendant, Wilson, to violate the restrictive covenants described below.

8. Defendant, Health Moxy, was formed on April 13, 2015 in the State of Arizona, by Defendant Wilson. **A true and correct printout from the Arizona Corporation Commission website reflecting the formation and current status of Health Moxy is attached hereto and made a part hereof at Composite Exhibit "A".**

9. All conditions precedent to this action have occurred, have been waived, or have otherwise been satisfied.

## EXAM COORDINATORS NETWORK'S BUSINESS

10. ECN is an Illinois corporation that provides a wide array of services to assist clients in managing the cost of medical claims and cases.

11. ECN procures and provides the highest quality independent medical examinations, medical record and radiology reviews, FCE's, Return-to-Work, and Fitness for Duty Examinations, FMLA and ADA reviews from their nationwide network of experienced medical experts in all medical specialties and allied health professions.

12. ECN is a leading national provider of medical expert procurement and independent medical review services.

13. ECN's clients include insurance carriers, attorneys, workers compensation case managers, long and short term disability case managers, public and private risk managers, hospitals, large and small corporations, and third party administrators.

14. ECN's nationally acclaimed panel of medical experts includes physicians in all medical specialties and allied health professions.

15. ECN's services are competitively priced and ECN distinguishes itself from its competitors through the exceptional service level that it provides, including:

   a. Each file is reviewed by a physician and/or attorney;

   b. All examinations and medical record reviews are scheduled in compliance with various state and federal laws as well as agency regulations;

   c. ECN and its owners are certified instructors for continuing education courses in a number of states. ECN provides on-site continuing education and training to its clients at substantially reduced rates;

   d. ECN understands that communication is vital to an efficient case management system. With "up to the minute" technology, ECN's clients are able to access "real time" case information over the internet;

   e. ECN can provide monthly, quarterly, or yearly case management report summaries tailored to meet its client' needs; and

   f. Through its nationwide offices, ECN is able to provide "local service on a national level". ECN offers free on site photocopy services, medical record pick up (including imaging studies) and rush services.

16. ECN works hard to exceed client expectations.

17. ECN strives to bring products and services to clients which are innovative, efficient and economical.

18. ECN achieves its objectives by using employees who are specially trained and have specific knowledge about the services performed by ECN and their uses and needs for their clients' specific needs.

19. ECN protects its trade secret and confidential and proprietary information by having its employees sign written confidentiality and non-solicitation agreements that expressly include a non-disclosure of confidential information provision and a non-solicitation of customers provision.

20. After signing the confidentiality and non-solicitation agreements, the employees are given access to ECN's confidential and proprietary information, which includes:

   a. its methods, procedures, devices and other means used in the conduct of its business, marketing plans and strategies, pricing plans and strategies, data processing programs, databases, all other matters of a technical nature, all of which information is not publicly available;

   b. its names and addresses of its customers and their representatives responsible for entering into contracts for ECN's services, customer leads or referrals, specific customer needs and requirements and the manner in which they have been met by ECN, information with respect to pricing, costs, profits, sales, markets, plans for future business and other development, all of which information is not available from directories or other public sources; and

    c. its information with respect to its employees, their names and addresses, compensation, experience, qualifications, abilities, job performance and similar information.

21. ECN has an established base of identifiable, repeat clients located throughout the United States.

22. Over a period of time, ECN employees establish relationships with the customers, learning each's needs and preferences.

23. ECN has devoted and continues to devote substantial time and expense to develop and maintain its customer base.

24. Competition in the practice of independent medical reviews and expert medical reviews in the United States is fierce. ECN has thus devoted substantial time, effort and money to the development of its business methods, customer relationships and customer information.

25. A critical component of ECN's business is its placement of employees in close business and personal contact with customers. Thus, when an employee ends his or her relationship with ECN, it is crucial to the success or failure of ECN's business to protect against the misappropriation of customer relationships and interference with ECN's advantageous contractual and business relationships with insurance carriers, attorneys, workers compensation case managers, long and short term disability case managers, public and private risk managers, hospitals, large and small corporations, and third party administrators.

**EXAM COORDINATORS NETWORK, INC.'s AGREEMENT WITH WILSON**

26. ECN protects its relationships with its customers by having its employees sign agreements with restrictive covenants.

27.     On or about December 7, 2013, Heather Wilson signed a Confidentiality and Non-Solicitation Agreement with ECI Holdings, LLC d/b/a Exam Coordinators Network ("Agreement") at the time she commenced her employment with Exam Coordinators Network as an employee for Exam Coordinators Network.  **A true and correct copy of the Agreement is attached hereto and incorporated herein at Exhibit "B".**

28.     On or about December 2013, and with an effective date of December 7, 2013, ECI Holdings, LLC d/b/a Exam Coordinators Network assigned all of its rights, title and interests in and to the Agreement to Plaintiff, EXAM COORDINATORS NETWORK, LLC by virtue of an Assignment Agreement ("Assignment Agreement").  **A true and correct copy of the Assignment Agreement is attached hereto and incorporated herein at Exhibit "C"**.

29.     Among other things, Section 2 of the Agreement expressly provides that:

> <u>Non-Disclosure of Confidential Information</u>.  Employee acknowledges and agrees that any disclosure, divulging, revealing or other use of any of the aforesaid Confidential Information by the Employee, other than in connection with Company's business will be highly detrimental to the business of Company and serious loss of business and pecuniary damage may result therefrom.  Accordingly, Employee specifically covenants and agrees to hold all such Confidential Information and any documents containing or reflecting the same in the strictest confidence, and Employee will not, both during employment with Company or at any time thereafter, without Company's prior written consent, disclose, divulge or reveal to any person whomsoever, or use for any purpose other than the exclusive benefit of Company, any Confidential Information whatsoever, whether contained in the Employee's memory or embodied in writing or other physical form.

30.     Section 3 of the Agreement provides that:

> <u>Non-Solicitation of Customers</u>.  Employee acknowledges and agrees that during the court and solely as a result of his/her employment with Company, he/she has and will become aware of some, mort or all of Company's customers and clients, their names and addresses, their representatives responsible for engaging Company's services, their specific needs and requirements, and

leads and referrals to prospective customers and clients. Employee further acknowledges and agrees that the loss of such customers and clients would cause Company great and irreparable harm. Consequently, Employee covenants and agrees that in the event of the termination of his/her employment by Company, whether voluntarily or involuntarily, Employee will not, for a period of eighteen (18) months following the date of termination, directly or indirectly solicit or seek to do business with any customer or client, or active customer prospect of Company with whom Employee had business dealings while employed by Company.

31. Section 5 of the Agreement expressly provides that:

Enforcement of Covenants. Employee acknowledges and agrees that compliance with this Agreement is necessary to protect the business and goodwill of Company and that any breach of this Agreement or any paragraph hereof will result in irreparable and continuing harm to Company, for which money damages may not provide adequate relief. Accordingly, in the event of any breach or anticipatory breach of this Agreement by Employee, Company and Employee agree that Company shall be entitled to the following particular forms of relief as a result of such breach, in addition to any remedies otherwise available to it at law or equity: (a) injunction, both preliminary and permanent, enjoining or restraining such breach or anticipatory breach, and Employee hereby consents to the issuance thereof forthwith and without bond by any court of competent jurisdiction; and (b) recovery of all reasonable sums and costs, including attorney's fees, incurred by Company to enforce the provisions of this Agreement.

32. When she joined ECN, Heather Wilson received extensive training relating to ECN's methods, procedures, devices and other means used in the conduct of its business, marketing plans and strategies, pricing plans and strategies, data processing programs, databases and all other matters of a technical nature.

33. At all times since December 7, 2013 and until her termination date, Heather Wilson worked as an employee for ECN, and on behalf of ECN, developed significant relationships with ECN's customers.

34. Since December 7, 2013, Heather Wilson has been provided access to insurance carriers, attorneys, workers compensation case managers, long and short term disability case managers, public and private risk managers, hospitals, large and small corporations, and third party administrators with whom ECN enjoyed and enjoys beneficial contractual and advantageous business relationships.

35. On July 14, 2015, ECN delivered a termination letter to Heather Wilson providing for an effective date of termination of July 14, 2015. **A true and correct copy of ECN'S termination letter is attached hereto and made a part hereof as Exhibit "D".**

36. On December 22, 2015, Plaintiff's legal counsel wrote to Heather R. Wilson a cease and desist letter. **A true and correct copy of Plaintiff's legal counsel's December 22, 2015, letter to Defendant, HEATHER R. WILSON, is attached hereto and made a part hereof as Exhibit "E".**

37. Plaintiff's counsel notified Heather Wilson that she has "seven (7) days following receipt of this letter in which to contact undersigned counsel and to provide the documents and accounting requested herein. In the event we do not receive an affirmative response from you to this letter, our client will assume you will continue to intentionally and knowingly violate your contractual restrictions."

38. Moreover, Exhibit "D" provides in pertinent part as follows:

"Specifically, in Section 1 of the Confidentiality Non-Solicitation Agreement you acknowledged and agreed as follows:

> *"Employee acknowledges and agrees that Employee has and will come into contact with, have access to and learn various technical and non-technical trade secrets and other Confidential Information, which are the property of Company. Such Confidential Information includes but is not limited to methods, procedures, devices and other*

> *means used by Company in the conduct of its business, marketing plans and strategies, pricing plans and strategies, data processing programs, databases, and all other matters of a technical nature, all of which Confidential Information is not publicly available; names and addresses of Company's customers and their representatives responsible for entering into contracts for Company's services, customer leads or referrals, specific customers needs and requirements and the manner in which they have been met by Company, information with respect to pricing, costs, profits, sales, markets, plans for future business and other development, all of which Confidential Information is not available from directories or other public sources; and information with respect to Company's employees, their names and addresses, compensation, experience, qualifications, abilities, job performance and similar information.  All of the Confidential Information has been developed, acquired or complied by Company at its great effort and expense."*

In Section 2 you acknowledged and agreed that any disclosure, divulging or revealing or other use of Confidential Information other than in connection with ECN's business would be highly detrimental to the business and would result in a serious loss of business and pecuniary damages therefrom.  You specifically and affirmatively covenanted to hold all such confidential information and documents related thereto in the strictest confidence.

ECN is now aware that you have violated this non-disclosure provision and are using information related to ECN and its on-going business and contractual relationships to your benefit.  Therefore, in addition to your contractual violations, you are tortuously interfering with ECN's advantageous business and contractual relationships.  Specifically, this tortuous interference constitutes a violation of the Non-Solicitation of Customer provision set forth in Section 3.

39.    In response to the cease and desist letter of December 22, 2015, Defendant, HEATHER R. WILSON, sent the following email to undersigned counsel on December 28, 2015:

9

> Mr. Weintraub,
> I'm going to hire an attorney and we'll respond to you accordingly next week.
>
> Best,
> Heather Wilson

**A true and correct copy of Defendant's email is attached hereto as Exhibit "F".**

40.     Neither Defendant Wilson or any "attorney" has contacted Plaintiff or undersigned counsel and Defendants have failed "to provide the documents and accounting requested" in Exhibit E.

## COUNT I- INJUNCTIVE RELIEF TO PREVENT BREACH OF CONTRACT AND TO ENFORCE CONTRACT

41.     This is an action for injunctive relief at common law against Defendant, HEATHER R. WILSON.

42.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 36 above as if fully set forth herein.

43.     Defendant Healthy Moxy, LLC was formed on or about April 13, 2015, by Defendant, Heather R. Wilson while she was employed by Plaintiff.

44.     Defendant Heather R. Wilson has opened and is currently operating her own medical cost containment business in Arizona.

45.     Defendant Heather R. Wilson is using Defendant Health Moxy as a tool to violated the restrictions set forth in Exhibit B as assigned by Exhibit C.

46.     Defendant Heather R. Wilson is in breach of the Agreement and Assignment Agreement with ECN by virtue of her using information related to ECN and its on-going business and contractual relationships to her benefit.

47.     Defendant ECN has been and is likely to be substantially and irreparably injured in its business by Heather R. Wilson's breach of the Agreement and Assignment Agreement.

48. Defendant Heather R. Wilson has and will continue to violate the Agreement and Assignment Agreement unless enjoined by the Court. The threat of continued injury in the future to ECN's business and goodwill requires enforcement to prevent a violation of the non-disclosure of confidential information restriction and non-solicitation of customer provision contained in the Agreement and Assignment Agreement.

49. ECN has a substantial likelihood of prevailing on the merits at trial.

50. The balance of equity weighs in ECN's favor because the injuries suffered by ECN outweigh any harm an injunction may impose on Heather R. Wilson.

51. As acknowledged by the parties in the Agreement, that compliance with the Agreement is necessary to protect the business and goodwill of ECN, any breach of the Agreement will result in irreparable and continuing harm to ECN, for which money damages may not provide adequate relief and therefore ECN has no adequate remedy at law.

52. Defendant Heather R. Wilson has acknowledged in the Agreement that Plaintiff shall suffer "irreparable and continuing harm . . . for which money damages may not provide adequate relief, ECN shall be entitled to obtain injunctions, both preliminary and permanent, enjoining or restraining such breach or anticipatory breach.

WHEREFORE, Plaintiff, EXAM COORDINATORS NETWORK, INC., requests that this Court enter judgment against Defendant HEATHER R. WILSON and Defendant HEALTH MOXY, LLC, as follows:

    A. Temporarily and permanently enjoining Defendants HEATHER R. WILSON and Defendant HEALTH MOXY, LLC and their agents, employees, independent contractors, Member(s) and Managing Member(s) and/or Manager(s) from the following:

        1. To not contact, solicit or attempt to contact or solicit any customer served by Plaintiff, including without limitation by means of any direct mailings or announcements;

    2. Using or disclosing ECN's confidential and proprietary information, including, but not limited to ECN's customer lists;

    3. To account to Plaintiff and pay to Plaintiff all profits, compensation, commissions, remunerations or benefits which Defendants directly or indirectly have realized and/or may realize as a result of, growing out of, or in connection with any such violation.

B.     Requiring Defendants Heather R. Wilson and Health Moxy, LLC and their agents, employees, independent contractors, Member(s) and Managing Member(s) and/or Manager(s) to return all documents or materials containing ECN's Confidential Information;

C.     Awarding ECN costs of this action, including attorney's fees; and

D.     Granting such other relief as this Court deems appropriate under the circumstances.

**COUNT II - INJUNCTIVE RELIEF TO PREVENT TORTIOUS INTERFERENCE**

53.     This is an action for injunctive relief against Defendants for tortious interference with advantageous business relationships against Defendants, Health Moxy, LLC and Heather R. Wilson.

54.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 38 above as if fully set forth herein.

55.     ECN's business operates primarily through employees who are in almost daily contact with ECN's customers.

56.     The success of ECN's business and its relationships with its customers relies in large part, upon the relationships established and maintained by ECN's employees with its customers.

57. ECN has each of its employees sign agreements whereby they expressly agree that they will not solicit customers and they will not use or disclose any confidential information.

58. Heather R. Wilson, and Health Moxy, LLC, are aware of the relationships between ECN and its employees and of the existence of the Agreement between Heather R. Wilson and ECN.

59. Heather Wilson, and Health Moxy, LLC through Heather Wilson, knowingly and intentionally and without justification interfere with ECN's advantageous business relationships with ECN's customers.

60. As a proximate and direct result of Heather R. Wilson's actions, ECN has been, is and will likely continue to be substantially injured in its business.

61. Given the unjustified and egregious nature of Heather R. Wilson's interfering with ECN's business relationships with its customers, ECN has a substantial likelihood of success on the merits at trial.

62. Heather R. Wilson does not have any legitimate, legal or moral right to act as she has, so as to irreparably harm ECN.

63. The balance of equity weighs in ECN's favor because the injuries suffered by ECN outweigh any harm an injunction may impose on Heather R. Wilson and Health Moxy, LLC.

64. ECN has no adequate remedy at law as the harm inflicted by Heather R. Wilson is continuing and virtually impossible to estimate in terms of economic impact.

65. Damages alone cannot begin to compensate ECN for the injury caused by Heather R. Wilson's willful misconduct, individually or through Defendant Health Moxy and its agents, employees, independent contractors, Member(s) and Managing Member(s) and/or Manager(s).

66. Defendant Health Moxy, LLC benefits from Heather R. Wilson's misconduct as she is a Manager of Health Moxy, LLC and Heather R. Wilson's "alter ego".

WHEREFORE, Plaintiff, EXAM COORDINATORS NETWORK, INC., requests that the Court enter judgment against Defendants as follows:

a. Temporarily and permanently enjoining Defendants Heather R. Wilson and Defendant Health Moxy, LLC and their agents, employees, independent contractors, Member(s) and Managing Member(s) and/or Manager(s), and all those who act in active concert or participation with them, from interfering in any way with ECN's relationships with its customers;

b. Requiring Defendants to file with this Court and serve on ECN's attorney within 30 days after entry of an injunctive relief order, a written report under oath setting forth Defendants' compliance with such order;

c. Awarding costs and attorney's fees; and

d. Granting such other and further relief that the Court deems just and proper.

Dated: 3/3, 2016

EXAM NETWORK COORDINATORS, INC.

_/s/ Barbara Levine_
BARBARA LEVINE
President

WEINTRAUB & WEINTRAUB, P.A.
Attorney for Plaintiff
2700 North Military Trail, Suite 355
Boca Raton, Florida 33431
Tel: (561) 988-6411/Fax: (561) 988-6011
Email: services@weintraublawfirm.com
and pbw@weintraublawfirm.com

By: _/s/ Peter B. Weintraub_
PETER B. WEINTRAUB, ESQ.
Florida Bar No. 322199

## VERIFICATION

STATE OF FLORIDA

COUNTY OF PALM BEACH

Before me, the undersigned authority, personally appeared, Barbara Levine, who after being duly sworn, stated:

1. Her name is Barbara Levine.

2. She is the President of EXAM COORDINATORS NETWORK, INC.

3. She has personal knowledge of the facts and circumstances articulated in the foregoing Verified Complaint.

4. She has read the foregoing Verified Complaint.

5. She has freely and voluntarily executed this Verified Complaint to evidence the truth and veracity of the factual allegations set forth herein.

*Barbara Levine*

Barbara Levine, President
EXAM COORDINATORS NETWORK, INC.
6111 Broken Sound Parkway NW, #207
Boca Raton, Florida 33487

Sworn to or affirmed and signed before me on March 3rd, 2016, by Barbara Levine who is personally known to me or has produced drivers liscence as identification.

Notary Public State of Florida
Kylie M Feldman
My Commission FF 946622
Expires 01/23/2020

Notary Public

Print, type or stamp commissioned
Name of Notary Public

15